Edie v. Applegate *et al.*

1. Trust deed: application of rents and profits. Where, after a sale under a deed of trust of the premises described therein and conveyed thereby, to the payee of the notes secured thereby, the purchaser commenced his action of right to recover the possession; and the grantor in

the deed, and those claiming under him, all of whom were either makers or guarantors of the notes secured thereby, filed their bill praying that the sale under the deed of trust be set aside, and that the further prosecution of the action of right be enjoined; and on the motion of the respondent in the Chancery proceeding, a receiver was appointed who took charge of the property in controversy, it was held that the decree of the Court setting aside the sale in accordance with the prayer of the bill, and directing the application of the rents and profits which had accumulated in the hands of the receiver on the notes remaining in the hands of the purchaser unpaid, was not erroneous.

*Appeal from Jackson District Court.*

MONDAY, DECEMBER 15.

THE defendant, Applegate, being the owner of a certain mill property in Jackson county, and a farm adjoining, sold the same to Wilkins and Zeigler for $9,000. One thousand dollars were paid down, and notes, for $1,000 each, were executed by the purchasers for the balance due, payable semi-annually thereafter. To secure said notes, the purchasers executed a deed of trust on said premises purchased, making one Henry S. Todd, trustee, including in said trust deed a farm adjoining the Applegate property, owned by the said Wilkins individually. Nearly one year after this purchase, Wilkins & Zeigler sold the Applegate property to one Peter Moriarty, and conveyed the same by deed, subject to the deed of trust, and incumbrance of $8,000. On the same day this purchase was made, Moriarty leased the mill and Applegate farm to James P. Edie, the appellant, for the term of three years, for a yearly rent of $500, payable semi-annually. Edie went into possession under this lease, and made certain improvements upon said mill. Wilkins & Zeigler failed to pay one of the notes for $1,000, falling due in 1858, and Todd, as trustee, sold the entire property described in the deed of trust to said Applegate, and executed to him a deed therefor. Applegate immediately commenced proceedings to eject the said Edie

from the premises. The present proceeding was commenced by Moriarty, Edie, Wilkins and wife, to set aside the sale, for the reasons stated in the petition, and an injunction was granted, staying the proceedings of Applegate in ejectment. In this proceeding Applegate answered and asked for the appointment of a Receiver to take charge of said property, alleging that the property was being greatly damaged and injured by the waste committed on the same by said plaintiffs, that Edie and Wilkins were insolvent, and unable to pay any judgment against them for waste, and use of said premises. The Court appointed a Receiver, and directed him to take possession of said property, and to collect the rents and profits, during the pendency of this suit. It also appears that after the sale to Moriarty, he and Edie each became indorsers upon the notes secured by the deed of trust, Moriarty having agreed with Wilkins & Zeigler to assume the liability to Applegate.

The Court, upon the final hearing of said cause, set aside the deed to Applegate by Todd, as trustee. The Receiver, under the order of Court, filed his report, from which it appeared that he had in his hands the sum of $512.82, which the Court ordered to be applied "in part payment of the note or notes made by Wilkins & Zeigler, and secured by the said deed of trust, which notes are indorsed by the person or persons shown by the pleadings and evidence, the said sum to be applied upon the notes coming due next after the note or notes that have been hitherto paid by the sale of said property or otherwise." From this order Edie appeals.

*Poor, Adams & Cram* for the appellant.

I. Under the Statute of Iowa, the mortgagor of real estate holds the legal title and right of possession, in the absence of stipulations to the contrary. Code of 1851, § 1210; Rev., 1860, § 2217.

II. A deed of trust executed as security for the payment of money is a mortgage, and in legal effect does not differ from any other form of mortgage, except as to the manner in which it may be enforced. 1 Greenl. Cr., 548 and note; *Parks* v. *Hall*, 2 Pick., 211; *Woodruff* v. *Robb et al.*, 19 Ohio, 212; Pow. Mort., 9 and 10; 4 Kent, 140; *Perkins* v. *Dibble*, 10 Ohio, 435; *Hoffman, Burneston & Co.* v. *Mackall et al.*, 5 Ohio S., 130; *Eaton* v. *Whiting*, 8 Pick., 431; *Bennett et al.* v. *The Union Bank et al.*, 5 Humph., 631.

III. But admitting that trustees are not within the scope of § 1210 of the Code of 1851, the defendant has not made a proper case for the application of the rents and profits to the payment of the mortgagor's debt. *Howard* v. *Ripley*, 10 Paige, 48; *Astor* v. *Turner*, 11 Id., 336.

*Bissell & Shiras* for the appellee, contended that the trustee named in a deed of trust, holds the legal title and has the rights of a mortgagor at common law. *Cook & Sargent* v. *Dillen*, 9 Iowa, 407; and was entitled to the rents and profits. 4 Kent, 173; 1 Halst. Ch., 343; *West* v. *Chamberlin*, 8 Pick., 336; *Hunt* v. *Stiles*, 10 N. H., 468.

BALDWIN, C. J.— The cardinal point of controversy between the original parties to this proceeding, was settled by the decree of the Court in setting aside the sale made to Applegate by Todd, the trustee. This ruling of the Court is not appealed from. The only question to be disposed of relates to the disposition of the funds in the hands of the Receiver. Edie claims that it belongs to him as the lessee of Moriarty, the vendee of Wilkins & Zeigler, that the sale under the deed of trust being set aside. Applegate could not be regarded as a mortgagee, and entitled to the possession, from the fact that the conditions in the mortgage had been broken.

It is claimed by Applegate that notwithstanding the sale had been set aside, yet when the purchase was made he

became entitled to the rents and profits, and that all Edie, who stood in the shoes of Moriarty, could require, would be that Applegate should account for the rents and profits by giving credit for the amount upon the notes held by him, that the setting aside of sale placed Applegate in the position of a party who has entered into possession for the purpose of foreclosing his mortgage, but has not done so.

It is also claimed that Edie and Moriarty each indorsed the several notes given by Wilkins & Zeigler to Applegate, and that they are each liable for the payment of said notes secured by the deed of trust, and the said notes being due and unpaid, the Court, in the proper exercise of its chancery powers, could apply the funds in the hands of the Receiver to the payment of said debts.

It is denied by the appellant that there was any evidence introduced in the Court below, or in the record tending to show that the appellant ever indorsed said notes.

An amended or additional transcript is annexed to the original one, to which the said notes are attached, showing the fact as pleaded that the appellant was an indorser thereon.

The counsel for the appellee claims that this transcript has been sent up and attached to the papers since the cause was submitted, and that for this reason should not be considered. No effort, however, has been made to have this portion of the record stricken from the files and we therefore will have to consider it as properly a part thereof.

The evidence certified to as in this transcript shows clearly that Edie and Moriarty each indorsed the notes given by Wilkins & Zeigler, and that they guaranteed the payment thereof at maturity. Where the decree of the Court was entered disposing of the funds in the hands of the Receiver, these several notes had matured, and Edie the appellant was primarily liable for the payment thereof, upon his guaranty. Under these circumstances the Court

had the power to dispose of this fund in the manner that it did, and in fact, from the tenor of the decree we are inclined to the opinion that it was upon this ground that the order was so made.

Holding as we do, that Edie was not entitled to this money, that it was applied in the payment of a debt that he had assumed to pay, it is not important to determine whether Applegate, under the pleadings and evidence, was in equity entitled to the rents and profits while the property was in the possession of the Receiver.

The judgment is therefore

Affirmed.